UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MIGUEL MEJIAS,                                              :

                Petitioner,                         :

                           13 Civ. 8362 (PKC)(GWG)
      -v.-                                                         :

GARY FILION,                                                :   REPORT AND
                                                                                            RECOMMENDATION

                Respondent.                       :
------------------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     Miguel Mejias, currently an inmate at Coxsackie Correctional Facility in Coxsackie, New York, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mejias was convicted of one count of criminal possession of a controlled substance in the first degree, N.Y. Penal Law § 220.21(1), and one count of conspiracy in the second degree, N.Y. Penal Law § 105.15, following a jury trial in New York State Supreme Court in August 2009. After trial, Mejias was sentenced to a determinate term of thirteen years imprisonment and a concurrent indeterminate term of five to fifteen years imprisonment, to be followed by five years of post-release supervision. For the following reasons, Mejias's petition should be denied.

I.     BACKGROUND

     A.     Trial, Conviction, and Sentencing

     On June 24, 2008, Mejias, Carlos Loveras, Armando Magallon, Junior Lantigua, and Antonio Rodriguez were indicted for criminal possession of a controlled substance in the first degree and conspiracy in the second degree. See The People's Appellate Division Brief (annexed as Ex. to Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Feb. 21, 2014 (Docket # 9) ("Resp. Decl.")), at 3. A joint jury trial of Mejias and co-defendants

1

Lantigua and Rodriguez began on July 29, 2009.  Id. at 4.  The evidence presented at Mejias's trial was later summarized by the New York Court of Appeals as follows

> Defendants Miguel Mejias and Antonio Rodriguez were indicted . . . for their respective roles in a drug-trafficking operation involving the movement of 400 pounds of cocaine (valued at $14 million) from California to New York.  Much of the evidence against defendants and their coconspirators was derived from wiretapped cell phone conversations.  The intercepted calls were in Spanish and contained what the People describe as "cryptic and coded" language.  At trial, the People called a special agent with the Drug Enforcement Agency, whom the trial court qualified as "an expert in the operation of high level narcotics trafficking and interpretation of language over cell phones."  The special agent explained that traffickers often use benign language in describing illegal activity, and interpreted for the jury the conversations engaged in by the various participants in the drug trafficking.
>
> The trial evidence — which consisted of 87 wiretapped conversations between the purported ringleader, Carlos Loveras, and others — established that defendants assisted Loveras in conducting a "dry run" without the cocaine, and that defendant Mejias assisted in securing a "stash house" for the drugs during the actual run.  Wiretapped recordings also uncovered conversations whereby law enforcement learned that a codefendant, at Loveras's request, attempted to purchase a tractor trailer and incorporate a trucking company.
>
> Weeks later, when the truck containing the cocaine arrived in New York, the truck would not fit in the driveway of the stash house.  The truck was then taken to a store parking lot, while Loveras and defendant Rodriguez attempted to find an alternative stash house.  Mejias stayed behind with the truck.  Meanwhile, members of the New York Drug Enforcement Task Force, who had been conducting the wireless surveillance and following the truck, staked out the store parking lot and observed Mejias pacing alongside the truck and, on one occasion, entering it.  When Loveras and Rodriguez (and others) returned to the store parking lot, Task Force members arrested them and secured the truck.  After an extensive search, law enforcement discovered the cocaine in the trailer's frame.  The trial of defendants lasted two weeks during which over 200 exhibits were entered in evidence.

People v. Mejias, 21 N.Y.3d 73, 76-77 (2013).

On August 12, 2009, after the parties rested their cases but before they began closing statements, an allegation of juror misconduct arose.  See State Court Transcript (Docket ## 11, 12) ("Tr."), 1330-32.  The trial judge, the Honorable Bonnie Wittner,  told the parties that she had received a written note from one of the jurors in which the juror requested more

2

information about Mejias's interactions with co-defendant Lantigua. (Tr. 1330). The judge stated:

> Juror number ten handed the officer a note, and then he gave it to me. "We want to know how/when and under what pretext Junior met Miguel Mejias." It says, "for Judge Wittner." I will mark it as a court exhibit, but I don't think it's necessary to answer that because it's clear that I told them in the beginning of this trial that they can only base their verdict on evidence that's introduced, and the reasonable inferences from those, and there may be answers to questions – there may be questions they still have at the end of the trial. So I don't think I need to do anything.

Id. Mejias's defense counsel took issue with the note, stating, "Judge, the problem is that the note begins, 'We want to know,' and that indicates to me that juror number ten has been discussing the evidence with at least one other juror, which is why it's written 'we.' I would ask that you inquire of juror number ten." (Tr. 1333). The judge responded, "Well, it's also not very well written. 'Under what pretext.' So I would say it is her way of expressing herself. It does not necessarily mean 'we.'" Id. Mejias's counsel reiterated his concern and requested, "I ask that you ask juror number ten whether she has been discussing any of the evidence with any of her fellow jurors which would be in disobedience to the Court's rules." Id.

Before the jurors were brought back into the courtroom following their lunch break, the judge asked the parties how they wanted to proceed with the issue, suggesting, "I could speak to the juror individually, or I can speak to the whole panel and just say I received a note and tell them that they can't deliberate, or they are not supposed to be talking about the case." (Tr. 1336). Mejias's counsel restated his position that the judge should individually question the juror who wrote the note. (Tr. 1337). However, the prosecutor asserted that it would be sufficient to "address them as a panel and state that they should not be deliberating, that deliberations will begin shortly, and they should not speculate, and they should not discuss the case, or form any opinions until the evidence is closed." Id. The judge responded: "I don't

want . . . to isolate particular jurors, I think it would be best to say what happened and tell the jury just talk about it and say they can not talk about the case, if anyone has, they should bring it to my attention." (Tr. 1338).

Mejias's counsel then proposed that if the judge did not want to question the jurors individually, she should simply remove the juror who passed the note and have the alternate juror take her spot. Id. The judge rejected defense counsel's proposals and instead decided to raise the issue in front of the whole jury panel rather than question the jurors individually. (Tr. 1339). When the jurors were brought into the courtroom, the judge explained what had occurred and said that if any one of them had broken the rule not to discuss the case with anybody until deliberations begin, that person should raise his or her hand. Id. None of the jury members raised their hands. Id. The judge then acknowledged, "Just to be clear, no one raised their hands, have talked about the case amongst themselves, or with anyone else." (Tr. 1341). After once again reminding the jury not to discuss the case with anyone until she gave them instructions on the law, the judge directed the parties to proceed with their closing statements. (Tr. 1340-41).

The next day, the jury deliberated and returned a verdict convicting Mejias of all charges. (Tr. 1558-59). On September 24, 2009, Mejias was sentenced to a determinate prison term of thirteen years on the possession count and a concurrent indeterminate prison term of five to fifteen years on the conspiracy count, to be followed by five years of post-release supervision. See Resp. Decl. ¶ 1.

  B. Direct Appeal

On August 12, 2010, Mejias, represented by new counsel, filed an appeal with the Appellate Division, First Department. See Brief for Defendant Appellant, dated Aug. 12, 2010

4

(annexed as Ex. to Resp. Decl.).  In relevant part, Mejias argued in his appellate brief that "the Court committed reversible error when it refused to remove juror no. 10, or even to question said juror individually, after that juror sent a note to the court . . . ."  See id. at 14-18.  In making this argument, Mejias cited exclusively to New York State case law, with primary reliance placed on the case of People v. Buford, 69 N.Y.2d 290 (1987).  On July 7, 2011, the Appellate Division affirmed Mejias's conviction, finding that

> The court did not abuse its discretion when it declined to conduct any individual inquiries, but instead addressed the problem by way of inquiries directed to the jury as a group, along with careful instructions (see People v. Buford, 69 N.Y.2d 290, 298–299, 514 N.Y.S.2d 191, 506 N.E.2d 901 [1987]).  Given the circumstances, there is no reason to believe there were actually any premature deliberations, and the court's actions were sufficient to avoid any prejudice.

People v. Lantigua, 926 N.Y.S.2d 510, 512 (1st Dep't 2011).

On July 11, 2011, Mejias, through his counsel, submitted an application seeking leave to appeal to the New York Court of Appeals.  See Application for Certification, dated July 11, 2011 (annexed as Ex. to Resp. Decl.).  In the application, Mejias asserted that the Appellate Division had erred when it rejected his Buford argument.  See id. at 5-9.  Mejias stated in the letter, "when an Appellate Division court ignores the clear holding of Court of Appeals decision (i.e. People v. Buford, 69 N.Y.2d 290 et al.), it is especially appropriate for the Court of Appeals to take corrective action."  Id. at 2.  On April 24, 2012, the Court of Appeals granted Mejias's application to appeal.  See Corrected Certificate Granting Leave, dated Apr. 24, 2012 (annexed as Ex. to Resp. Decl.).  Mejias's two briefs to the Court of Appeals cited exclusively to New York state case law in addressing the jury misconduct issue.  See Appellant Miguel Mejias's Brief on Appeal (annexed as Ex. to Resp. Decl.), at 16-28; Appellant Miguel Mejias's Reply Brief (annexed as Ex. to Resp. Decl.), at 4-14.

On May 7, 2013, the New York Court of Appeals affirmed the Appellate Division's decision, finding that "[b]ecause the rationale of Buford is not implicated in the circumstances of this case, we conclude that the trial court did not violate Buford in not conducting an individual inquiry." Mejias, 21 N.Y.3d at 76. Specifically, the court held

> Premature deliberation by a juror, by itself, does not render a juror grossly unqualified. In addressing the latter possibility, i.e., that the note was, in effect, asking for additional evidence, the trial court correctly apprised the jury that it was not permitted to ask questions before it had been charged. Absent some indication that the note-writing juror had engaged in some disqualifying conduct, the fact that one or more jurors may have engaged in premature deliberations or requested additional evidence was not sufficient to trigger a Buford inquiry. Nor did the court abuse its discretion by asking the jury panel as a whole whether its members had engaged in premature deliberations and in issuing an unambiguous instruction that they were not to do so.

Id. at 79-80. A dissent was filed by Chief Judge Lippman in which he opined that the majority had applied Buford too narrowly and that "the concerns raised by the juror note here involved were of an order that the procedure mandated by Buford was designed to address." Id. at 84-85. Mejias submitted a motion for reargument, but this request was denied by the Court of Appeals on September 10, 2013. See People v. Mejias, 21 N.Y.3d 1058 (2013).

   C.  The Instant Petition for Writ of Habeas Corpus

Mejias filed the instant petition, through counsel, on November 22, 2013. See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed Nov. 22, 2013 (Docket # 1) ("Pet."); Petitioner's Memorandum of Law, filed Nov. 22, 2013 (Docket # 2) ("Pet. Mem."). Respondent filed papers opposing the petition. See Resp. Decl.; Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Feb. 21, 2014 (Docket # 10) ("Opp. Mem"). Mejias submitted a reply. See Petitioner's Reply Memorandum for Writ of Habeas Corpus, filed Mar. 26, 2014 (Docket # 14).

II.     APPLICABLE LAW

    A.     Legal Standard for Petitions Brought Pursuant to 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a claim will be considered "adjudicated on the merits" even if the state court fails to mention the federal claim and cites no relevant federal case law. Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Harrington v. Richter, 131 S. Ct. 770, 784–85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (citation omitted); see also id. at 784 (section 2254(d) deference applies even "[w]here a state court's decision is unaccompanied by an explanation"). Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been unreasonable — a standard that is met only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786; accord id. ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable") (citation omitted). In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question." Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment." Yarborough v. Alvarado, 541

U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law." Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted). Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Id. at 106-07 (citation omitted). Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer" to the question presented in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision can be neither contrary to nor an unreasonable application of clearly established federal law. See Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citations and internal quotation marks omitted). As the Supreme Court has noted, "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, --- U.S. --- , 2014 WL 1612424, at *8 (U.S. Apr. 23, 2014).

B.   Exhaustion

"Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of

9

a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). The Supreme Court has held:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005). Thus, a petitioner is required to have presented each claim to all available levels of the state courts. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("[T]he prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review.")) (internal quotation marks and citations omitted). The petitioner must also have fairly presented the "federal nature" of each claim to the state courts. See id.; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Rosa v. McCray, 396 F.3d 210, 217 (2d Cir. 2005).

III.   DISCUSSION

In his habeas petition, Mejias raises only one ground for relief — that his "Sixth Amendment rights to the assistance of counsel and to trial before a fair and impartial jury were violated, when a jury note indicated that jurors were discussing the case on the merits prior to closing argument." See Pet. at 6. Respondent contends that Mejias has not exhausted his Sixth Amendment claims because "nowhere in his brief to either the Appellate Division or to the Court of Appeals did [Mejias] ever assert that his Sixth Amendment right to counsel was violated or that he was denied his right to present a closing summation . . . . Nor did [Mejias] exhaust his claim that the jurors' premature deliberation violated his Sixth Amendment right to a fair and impartial jury." See Opp. Mem. at 16-17.

10

While we are inclined to agree with the respondent's argument, it is not necessary to reach it as the petition plainly fails on the merits.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  While Mejias cites four Supreme Court cases in support of his claims, none of the holdings of these cases address the question of whether a trial judge in a situation involving allegations of premature deliberations is required to question the jurors individually or instead is allowed to address the panel as a whole.  One of the cases, Herring v. New York, 422 U.S. 853 (1975), does not even address juror misconduct, holding only that the State could not deprive a criminal defendant of his right to present a closing statement at a bench trial.  Id. at 865.  The other cases similarly do not address the issue raised by petitioner.  Tanner v. United States, 483 U.S. 107 (1987), held that a defendant did not have a right to an evidentiary hearing on the question of whether a member of the jury had abused drugs and alcohol.  Id. at 127.  Smith v. Phillips, 455 U.S. 209 (1982), held that where there had been allegations of juror partiality, the court's grant of a post-trial hearing at which "the defendant ha[d] the opportunity to prove actual bias" was sufficient to protect the defendant's due process rights.  Id. at 215, 218.  Finally, Remmer v. United States, 347 U.S. 227 (1954), held that communications by outsiders with members of a jury are "presumptively prejudicial," and thus, a trial court has an obligation to investigate such contacts when allegations of misconduct arise.  Id. at 229-30.

Obviously, none of these cases contain any holdings that govern the issue presented in this petition.  At best, they speak to the need of a hearing where there is outside influence on a jury or evidence of juror partiality.  They do not speak to the need for a hearing in a situation where there are allegations of premature deliberations.  A fortiori they provide no guidance on

the manner in which such allegations should be addressed by a trial court.

Because none of these cases provide a "clear answer" to the issue presented in this petition, Wright, 552 U.S. at 126, federal habeas corpus relief is not available.

IV.   CONCLUSION

For the foregoing reasons, Mejias's petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. P. Kevin Castel at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Castel. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: May 8, 2014
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge